**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cadence Bank, | No. CV-23-00124-TUC-SHR |
| Plaintiff, | **Order Re: Defendant's Motion to Dismiss** |
| v. | |
| Heritage Family Offices L.L.P., | |
| Defendant. | |

Pending before the Court is a Motion to Dismiss filed by Defendant Heritage Family Offices, L.L.P. ("Defendant") pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). (Doc. 10.)   Defendant filed its Motion and Plaintiff Cadence Bank, f/k/a BancorpSouth Bank, a Mississippi corporation ("Plaintiff") filed a Response. (Doc. 14.) For the reasons stated below, the Court grants in-part and denies in-part Defendant's Motion.[1]

I.        **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the Complaint (Doc. 1) and construed in the light most favorable to Plaintiff.

---

[1]Although Plaintiff requested oral argument (Doc. 14 at 1), the Court declines because oral argument will not aid in resolution of the issues raised. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument.); Fed. R. Civ. P. 78; *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Bach v. Teton Cty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.")

**A.  Parties**

Plaintiff is a financial services company offering "wealth management and financial advisory services to its customers."  (Doc. 1 ¶¶ 6, 11.)  This includes investment and financial advice to clients through its wealth management team.  (*Id.* ¶ 11.)  At the relevant time, Infinex Investments, Inc. ("Infinex") was the "broker-dealer with whom Plaintiff participated as a subscriber under an Investment Services Agreement."  (*Id.*)  "During the period relevant to this action, Infinex acted as broker-dealer for Plaintiff's registered agents, supervising and sponsoring their advising services in accordance with the Financial Industry Regulatory Authority and applicable law."  (*Id.*)  "Under the Investment Services Agreement, certain employees of Plaintiff enter into a Registered Representative Agreement ('Agreement') with Infinex, in which Plaintiff ('Subscriber' in the Agreement) is identified as a third-party beneficiary of the Agreement."  (*Id.* ¶ 12.)  The Agreement imposes various obligations on employees and requires them to follow the terms of Plaintiff's Code of Business Conduct and Ethics Policy.  (*Id.* ¶¶ 13–15.)

Plaintiff alleges Defendant is an Arizona limited liability partnership who offers "brokerage and investment services for [its] customers and perform[s] the same, or substantially the same, functions" as Plaintiff "connected with the banking, financial services, and investment industry."  (Doc. 1 ¶¶ 7, 19.)

**B.  Thomas's Employment**

On April 29, 2019, Plaintiff hired Zachary Thomas "to provide investment services to its customers."[2]  (Doc. 1 ¶¶ 3, 16.)  On that date, Thomas entered into the Agreement with Infinex.  (*Id.* ¶¶ 16–17.)  On or around June 24, 2022, Thomas resigned from his position with Plaintiff.  (*Id.* ¶ 19.)  According to Plaintiff, "Thomas became an employee of Defendant" sometime "before, upon, or shortly" after the resignation.  (*Id.*)

Plaintiff alleges "Thomas contacted certain of Plaintiff's employees to induce them to leave their employment with Plaintiff, or to solicit them for employment with Defendant."  (Doc. 1 ¶ 20.)  Plaintiff also alleges Thomas "solicited Plaintiff's customers

---

[2]At the time of the hire, Cadence Bank was known as BancorpSouth.  (Doc.1 n.1.)

1    to move business from Plaintiff and to Thomas or Defendant." (*Id.* ¶ 21.) According to

2    Plaintiff, its counsel sent Thomas a letter on June 27, 2022, informing Plaintiff he was

3    violating the Agreement and he needed to immediately "cease and desist his conduct." (*Id.*

4    ¶ 24.) Thomas did not respond to the letter. (*Id.*)

5                    **C. <u>Preliminary Injunction in Texas</u>**

6          On July 1, 2022, Plaintiff obtained a preliminary injunction (the "Injunction")

7    against Thomas in a state court in Texas. (Doc. 1 ¶ 25.) The Injunction "prohibited Thomas

8    from contacting or soliciting Plaintiff's customers." (*Id.*) According to Plaintiff, the

9    Injunction "was extended several times, and a temporary restraining order ('TRO') against

10    Thomas and others acting in concert with Thomas, including Defendant, was issued on

11    August 29, 2022." (*Id.*)

12                    **D. <u>Current Lawsuit and Motion</u>**

13          On March 10, 2023, Plaintiff filed the current lawsuit. (Doc. 1.) Plaintiff brings

14    eight causes of action against Defendant: (1) violation of the Defend Trade Secrets Act, 18

15    U.S.C. § 1836; (2) violation of the Arizona Uniform Trade Secrets Act, A.R.S. § 44-401 *et*

16    *seq.*; (3) intentional inference with contractual relations and business expectancies; (4)

17    aiding and abetting breach of fiduciary duty; (5) aiding and abetting conversion; (6) unjust

18    enrichment; (7) unfair competition/misappropriation; and (8) civil conspiracy. (*Id.* ¶¶ 27–

19    78.)

20          Defendant now "moves for dismissal under Fed. R. Civ. P. 12(b)(3) and 12(b)(6)

21    because (1) the entire lawsuit is premised upon an agreement that was terminated by

22    Plaintiff and that termination rendered the operative provisions of the agreement null and

23    void; (2) if the agreement remains viable, venue is improper in this Court under the

24    applicable forum selection clause; (3) Plaintiff has failed to plead facts essential to its

25    claims under the Defen[d] . . . Trade Secrets Act ('DTSA') and the Arizona Uniform Trade

26    Secret[s] Act, ('AUTSA'); and (4) Plaintiff's common law tort claims are preempted by

27    the AUTSA and otherwise fail to state an actionable claim." (Doc. 10 at 1.)

28    . . . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.        LEGAL STANDARDS

### A. 12(b)(3) Standard

Under Federal Rule of Civil Procedure 12(b)(3), a party may move for dismissal of an action that has been brought in an improper venue.  If venue is improper, the Court must either dismiss the case or, "if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings.  *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).  The Court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiffs. *See id.* at 1138.

### B. 12(b)(6) Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (second alteration in original) (internal quotation marks omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.      DISCUSSION

#### A. **Documents**

As a threshold matter, the Court must first determine whether it can consider Defendant's proffered exhibits attached to its motion to dismiss.  Defendant attached the following four exhibits: (1) a full copy of the Agreement; (2) Plaintiff's July 1, 2022 Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, filed in the District Court of Williamson County, Texas, 26th Judicial District Court; (3) the July 1, 2022 Order Granting Temporary Restraining Order, and August 29, 2022 Order Granting Agreed Temporary Injunction; and (4) Plaintiff's July 1, 2022 Complaint against Infinex, filed in the United States District Court for the Southern District of Mississippi.   (Doc. 10 at 2, Exhs. 1–4.)   Defendant asks this Court to "incorporate or otherwise take notice of [these] four extraneous documents."  (*Id.* at 2.) Plaintiff argues the Court may only take judicial notice of the authenticity and existence of Exhibit Four, not the veracity or validity of its contents.  (Doc. 14 at 3.)  Plaintiff does not otherwise object to the consideration of the exhibits for purposes of this motion to dismiss. (*Id.* at 3–4.)

Normally, if a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion, it must convert that motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, the court can "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.* at 908. Incorporation by reference allows courts to consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not attached to the [plaintiff's] pleading."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152,

1160 (9th Cir. 2012) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  A court can take judicial notice of adjudicative facts that are "not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Here, the Court will consider Defendant's exhibits 1-3 for purposes of this Motion because they are referenced in the Complaint.  However, it will only take judicial notice of the existence of Exhibit Four, not the veracity or validity of its contents.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

## B. <u>Forum Selection Clause</u>

Defendant argues the Court should dismiss the Complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) because there is a forum selection clause in § 14 of the Agreement that "must be enforced" and this clause grants "exclusive jurisdiction to Williamson County, Texas." (Doc. 10 at 11; Doc. 17 at 1.)

In its response, Plaintiff argues Defendant cannot enforce the forum selection clause of the Agreement because Defendant is not a party or closely related to the Agreement. (Doc. 14 at 5–6.)  Specifically, Plaintiff argues "[b]efore that agreement, and for most of its existence, Defendant had no business relationship with either party.  Nor was Defendant involved—extensively or otherwise—in the formation, execution and/or subject matter of the [] Agreement." (*Id.* at 6.)  Plaintiff also argues the contract between Thomas and Defendant is "entirely separate" from the Agreement.  (*Id.* at 6.)

In its reply, Defendant argues the forum selection clause applies because "the claims cannot be adjudicated without analyzing whether Thomas breached the Agreement" and "the claims necessarily arise out of the Agreement." (Doc. 17 at 1–2.)  In other words, Defendant is arguing this situation is enough to meet the "closely related to the Agreement" standard. (*Id.* at 2.)

Forum selection clauses may be enforced against nonparties "where the alleged conduct of the nonparties is closely related to the contractual relationship." *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007); *see also Manetti–*

1    *Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 514 n.5 (9th Cir.1988).   In these situations,

2    "nonparties can be considered 'transaction participants' intended to 'benefit from and be

3    subject to' the forum selection clause."  *Mitsui Sumitomo Ins. USA, Inc. v. Tokio Marine*

4    *& Nichido Fire Ins. Co., Ltd.*, No. LACV1209953JAKJCGX, 2013 WL 12136602, at *4

5    (C.D. Cal. Aug. 8, 2013), *aff'd*, 659 F. App'x 918 (9th Cir. 2016) (quoting *Holland Am.*

6    *Line*, 485 F.3d at 456).   "The conduct of the parties is 'closely related' when the nonparty

7    is 'part of the larger contractual relationship' between the parties" which "occurs where the

8    nonparties to the contract are related entities."  *Id.* (quoting *Holland Am. Line*, 485 F.3d at

9    456).

10       Here, the parties do not dispute § 14 of the Agreement contains a forum selection

11   clause.[3]  They only dispute whether the forum section clause applies.  Defendant does not

12   claim it had any business relationship with either party to the Agreement prior to the

13   Agreement's creation or that it was involved in any way in the process of creating or

14   negotiating the Agreement.   Therefore, the Court concludes the alleged conduct of

15   Defendant is not closely related to the Agreement such that it can enforce the forum

16   selection clause.[4]

17                     **C. <u>Agreement Provisions</u>**

18       Defendant argues the entire lawsuit should be dismissed because all claims are

19   based on inapplicable provisions of the Agreement.  (Doc. 10 at 1, 10–11.)  Specifically,

20   Defendant makes two arguments.  First, Defendant argues § 7 is inapplicable because this

21   section stopped applying after Thomas resigned his employment.  (*Id.* at 10.)  Second,

22   Defendant argues § 8(c) is inapplicable because this section stopped applying after Plaintiff

23   gave written notice of its termination of its relationship with Infinex.  (*Id.*)

24
25       [3]"This Agreement shall be governed in all respects by the laws of the State of
     Connecticut, exclusive of principles of conflict of laws, and with the exception of matters
26   falling within the purview of paragraph 8, hereof, any dispute hereunder shall be submitted
     to arbitration in accordance with the rules then in effect of FINRA. With respect to matters
27   falling within the purview of paragraph 8, you and Infinex hereby consent to the exclusive
     jurisdiction of the United States District Court or State Court that has original jurisdiction
     for the judicial district or county in which you last provided services for Infinex."
28       [4]Defendant is not attempting to enforce the clause as a party to the contract. (Doc.
     17 at 1–2.)

### 1. Section 7

Section 7 of the Agreement states

> You agree that you will devote all the time, attention, knowledge and skills to the business of Infinex that are necessary to render your duties hereunder in a manner consistent with your performance of services as an employee of [Plaintiff]. Infinex will be entitled to all of the benefits, profits or other issues arsing from, or incident to, all of the work and services you provide hereunder and you will not, **during the term of this Agreement**, be interested, directly or indirectly, in any manner, as a partner, officer, director, stockholder, adviser, employee, or in any other capacity, in any other business similar to Infinex's business or any allied trade, and you will not, **during the term of this Agreement . . . .**

(Doc. 10-1 ¶ 7) (emphases added).

Defendant argues the portions of Section 7 of the agreement limiting Thomas's ability to work "became null and void the moment Thomas resigned his employment." (Doc. 10 at 10.) Plaintiff does not respond to this argument. (*See* Doc. 14 generally.)

To the extent Plaintiff intends to rely on provisions of § 7 for any of its claims, those claims are waived. *See*, *e.g., Doe v. Dickenson*, No. CV-07-1998-PHX-GMS, 2008 WL 4933964, at *5 (D. Ariz. 2008) ("[T]he Court is entitled to treat Plaintiffs' failure to respond as waiver of the issue and consent to Defendants' argument."); *Currie v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-07-2093-PHX-FJM, 2008 WL 2512841, at *2 n.1 (D. Ariz. 2008) ("Plaintiff does not respond to this argument, and her failure to do so serves as an independent basis upon which to grant [the] motion."). Even if this issue was not waived, the Court concludes the language of Section 7 appears to only apply *during* the term of the Agreement. Therefore, the Court will dismiss any claims related to Section 7 of the Agreement.

### 2. Section 8(c)

Section 8 of the agreement states

> (a) You agree that, except at the direction of Infinex, you will not, at any time, during or after the terms of this Agreement, either directly or indirectly, divulge, disclose or communicate any trade secrets learned by you in connection with your

engagement as an Infinex representative.  Trade secrets shall mean . . . .  This paragraph shall not apply if [Plaintiff] continues to offer investment products through its own broker-deal, investment adviser or insurance agency, or another third-party marketing firm, and you continue to be employed or otherwise associated with [Plaintiff].

. . .

(c)  Except as required in connection with the performance of your duties as an Infinex Representative as contemplated hereunder, you agree that, during your engagement under this Agreement and for a period of one (1) year thereafter, you will not, either directly or indirectly, for your own account or as an agent, servant, employee, officer, director, shareholder, partner, member or manager of any entity, or member of any member, or participant in any venture:

. . . .

In the event that [Plaintiff] terminates its subscriber agreement with Infinex, this **paragraph 8(c) shall not apply if [Plaintiff]** continues to offer investment products through its own broker-dealer, investment adviser or insurance agency or another third party marketer, **and you continue to be employed or otherwise associated with [Plaintiff].**

(Doc. 10-1 ¶ 8) (emphases added).

Defendant argues Plaintiff's Complaint relies upon the "one-year non-solicitation" clause in § 8(c) of the Agreement as the basis for every claim in the Complaint.  (Doc. 10 at 6.)  Defendant contends this case should be dismissed because § 8(c) of the Agreement ceased to apply after Plaintiff gave written notice of termination of its relationship with Infinex.[5]  (*Id.* at 10–11.)  Defendant reasons "[b]ecause the Agreement was no longer in effect, there was no possible breach of the Agreement by Thomas, and thus, no possible wrongdoing by" Defendant.  (Doc. 17 at 3.)

Defendant's argument is unavailing because it ignores the latter part of the language in § 8(c).  Even if Plaintiff terminated its subscriber agreement with Infinex on June 24, 2022, as Defendant contends, and Plaintiff continued to offer investment products after the termination (Doc. 1 ¶ 19), Defendant has not argued or shown Thomas continued to be

---

[5]According to Defendant, Plaintiff "provided to Infinex written notice of its termination of the Agreement" on June 24, 2022.  (Doc. 10 at 7.)

1    employed or associated with Plaintiff at any relevant time, as required by the Agreement,

2    to make § 8(c) inapplicable.  Therefore, Defendant's argument on this matter fails.

3                        **D.  <u>Preemption</u>**

4           Defendant argues Counts III-VIII should be dismissed because they are preempted

5    by the AUTSA claim.  (Doc. 10 at 13.)  Specifically, Defendant argues Counts III-VIII are

6    preempted by AUTSA because they are all common law tort claims "based on, rooted in,

7    or inescapably [dependent] on misappropriation of trade secrets."  (*Id.*; Doc. 17 at 11.)

8           Plaintiff argues "Defendant's preemption argument is not a proper basis to dismiss

9    any of Plaintiff's common law causes of action at this stage in the litigation" because

10   "whether confidential information Defendant is alleged to have taken falls within

11   AUTSA's definition of 'trade secret' does not hinge on a 'claim's label,' but rather 'on

12   discovery and further litigation that has not yet occurred.'"  (Doc. 14 at 13.)  Plaintiff argues

13   at this stage it is enough to allege there was other confidential and proprietary (non-trade-

14   secret) information at issue.  (*Id.*)

15          AUTSA creates an exclusive cause of action—and displaces conflicting causes of

16   action—for claims based on the misappropriation of trade secrets.  *Orca Commc'ns*

17   *Unlimited, LLC v. Noder*, 337 P.3d 545, 546 (Ariz. 2014); A.R.S. § 44-407.  The Arizona

18   Supreme Court has explained A.R.S. § 44-407 "displaces only conflicting tort claims for

19   'misappropriation' of a 'trade secret,' terms AUTSA specifically defines, and leaves

20   undisturbed claims 'that are not based on misappropriation of a trade secret.'"  *Orca*, 337

21   P.3d at 547.  In *Orca*, the Arizona Supreme Court held § 44-407 does not broadly displace

22   all common-law claims for misuse of confidential information that does not fall within

23   AUTSA's definition of a trade secret.  *Id.*

24          Because the AUTSA does not preempt claims that may be outside the scope of

25   AUTSA's definitions of "misappropriation" and "trade secret," the question is whether any

26   of the claims Defendant seeks to dismiss as preempted may encompass conduct or

27   information beyond "misappropriation of trade secrets."

28          Based on the allegations in the Complaint, it appears these counts could implicate

other confidential and proprietary information in addition to trade secrets. (Doc. 1 ¶¶ 50, 53–55, 58–60, 64, 69, 75). To the extent these claims are based on misappropriation of trade secrets, they are preempted. However, whether information constitutes a trade secret is a question of fact. *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 809 n.4 (D. Ariz. 2022). Because these claims could plausibly encompass non-trade-secret information, the claims cannot be preempted at this stage in the litigation. *See e.g., Modulus Glob. Inc. v. Quintzy FZE LLC*, No. CV-22-01457-PHX-GMS, 2023 WL 6147567, at *2 (D. Ariz. Sept. 20, 2023) (finding claims cannot be preempted at motion to dismiss stage); *TLX Inc. v. JetBlue Airways Corp.*, No. CV-19-04734-PHX-SMB, 2020 WL 364198, at *3 (D. Ariz. Jan. 22, 2020) (same).

### E.  <u>Failure to State a Claim</u>

Defendant argues Plaintiff failed to state a claim for all eight counts.

### 1.  Counts I and II–Misappropriation of Trade Secrets

Count I alleges Defendant violated the DTSA. (Doc. 1 ¶¶ 27–33.) DTSA defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information" that "(A) the owner thereof has taken reasonable measures to keep . . . secret"; and (B) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). "To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).

Count II alleges Defendant violated the AUTSA. (Doc. 1 ¶¶ 34–41.) AUTSA defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique or process, that both: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being

readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"; and "(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."   A.R.S. § 44-401(4).   "Under Arizona law, misappropriation of a trade secret includes the '[d]isclosure or use of a trade secret of another without express or implied consent by a person' who '[a]t the time of the disclosure or use,' 'knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . .'" *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 945 (D. Ariz. 2013) (alterations in original) (quoting A.R.S. § 44-401).

Because the claims are noticeably similar, the Court will analyze them together. *InteliClear*, 978 F.3d at 657.

Defendant seeks dismissal of the misappropriation claims on three grounds.  First, Defendant argues Plaintiff has not plead with the required particularity how it took reasonable measures to keep any information secret.  (Doc. 10 at 11.)  Second, Defendant argues Plaintiff has not plead with the required particularity how the information derives independent economic value.  (*Id.*)  Third, Defendant argues Plaintiff has not alleged how Defendant "itself, as opposed to Thomas" misappropriated trade secrets.  (*Id.*)

### a. Trade Secret–Reasonable Measures

First, Defendant argues Plaintiff merely recites the elements to prove reasonable measures were taken.  (Doc. 10 at 11.)  Defendant's first argument is unavailing.

Here, the Complaint alleges Thomas was required to keep trade secrets confidential pursuant to the Agreement he signed and the Code of Conduct he agreed to follow.  (Doc. 1 ¶¶ 14–18.)  The Agreement and the Code of Conduct contain confidentiality provisions related to trade secrets (*Id.* ¶¶ 14–15) and the Complaint also alleges Thomas received multiple trainings on the Code of Conduct (*Id.* ¶¶ 17–18).  This includes language requiring employees to "protect and maintain the consideration or proprietary character" of Trade Secrets and to return trade secret information upon termination of employment.  (*Id.* ¶¶ 14–15.)  The Court finds this sufficient.  *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d

511, 521 (9th Cir. 1993) (upholding confidentiality agreements as reasonable measures to insure secrecy).

### b.  Trade Secret–Independent Economic Value

Second, Defendant argues Plaintiff merely recites the elements to prove there is independent economic value. (Doc. 10 at 11.)  Defendant's second argument is unavailing.

Courts have identified various factors helpful in determining whether a customer list qualifies as a trade secret.  *Calisi v. Unified Fin. Servs.*, 302 P.3d 628, 631 (Ariz. Ct. App. 2013).  This includes whether the list (1) "represents a selective accumulation of detailed, valuable information about customers—such as their particular needs, preferences, or characteristics—that naturally would not occur to persons in the trade or business"; (2) was "compiled . . . by expending substantial efforts to identify and cultivate [a] customer base such that it would be difficult for a competitor to acquire or duplicate the same information"; (3) "derives independent economic value from its secrecy, and gives the holder of the list a demonstrable competitive advantage over others in the industry"; and (4) was "divulged . . . externally and internally, i.e., to people outside of [the holder's] business as well as to its own employees." *Id.* at 631–32 (citation and internal quotation marks omitted).

Here, the Complaint alleges Defendant misappropriated "customer lists (with detailed, non-public customer information Plaintiff expended substantial effort to develop that gives Plaintiff a competitive advantage over Defendant and other industry competitors), amounts Plaintiff charges its customers and earns on the book of business Defendant and Thomas misappropriated, and certain internal policies and private business information that gives Plaintiff an advantage over competitors." (Doc. 1 ¶ 30.)  The Court finds this sufficient at this stage.  *See Calisi*, 302 P.3d at 632 (citing case recognizing pricing information has independent economic value); *MAI Sys. Corp.*, 991 F.2d at 521 (finding independent economic value in customer database because it could help competitor's direction of sales efforts).

. . . .

- 13 -

*c. Misappropriation*

Third, Defendant argues the Complaint fails to allege Defendant "itself, as opposed to Thomas, acquired any trade secrets" because the Complaint simply alleges Defendant hired Thomas. (Doc. 10 at 11.) Defendant also argues Plaintiff fails to allege "facts to support the conclusion [Defendant] knew or had reason to know that Thomas used improper means" to obtain trade secrets. (*Id.* at 12.)

Plaintiff argues the Complaint plausibly alleges Defendant acquired and used its trade secrets because the Complaint alleges "Thomas acted with Defendant's knowledge" and "Defendant acquired Plaintiff's trade secret information by hiring Thomas." (Doc. 14 at 10–11.) Plaintiff also contends the Complaint alleges based "on information and belief that Defendant knew Plaintiff's trade secrets were acquired and would be used for improper means but still 'encouraged and supported the misappropriation' and 'knew, had reason to know, or expressly intended' that the trade secrets were 'inappropriately derived' and 'misappropriated and used' those trade secrets in the operation of its business." (*Id.* at 11 (quoting Doc. 1 ¶¶ 31, 38).) Plaintiff argues Defendant "undeniably knew" Thomas violated the Agreement because "Plaintiff sent Defendant a 'letter advising of Thomas' obligations and his violations'" on or about June 30, 2022. (*Id.* at 11–12.) According to Plaintiff, the rest of the allegations of Defendant's involvement based "on information and belief" are appropriate "because the details are unavailable to Plaintiff without the benefit of discovery." (*Id.* at 11.)

In the Reply, Defendant argues Plaintiff cannot rely on "information and belief" pleadings here because the facts are not peculiarly within Defendant's control or possession and Plaintiff has not alleged facts to make the Defendant's culpability plausible. (Doc. 17 at 5–6.) Specifically, Defendant argues the facts have been available to Plaintiff for nearly a year because Plaintiff filed a nearly identical action on July 1, 2022, in Texas State court against Thomas as the sole defendant—252 days before this Complaint was filed. (*Id.* at 5.) Defendant reasons Plaintiff "had sufficient opportunity to conduct discovery [in the Texas state court case] as to Thomas's alleged wrongdoings . . . including subpoenaing

documents or testimony from [Defendant]." (*Id.*)  Defendant also argues Plaintiff fails to provide any factual allegations as to how Defendant used or acquired any misappropriated trade secrets and how Defendant "encouraged and supported" Thomas in misappropriating trade secrets.  (*Id.* at 6–7.)

At the motion to dismiss stage, a plaintiff can plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

Here, contrary to Defendant's suggestion, the Complaint clearly alleges *Defendant* acquired and used trade secrets.  The Complaint alleges "[o]n information and belief, Defendant knew such information was acquired and intended to be used for improper means and encouraged and supported the misappropriation." (Doc. 1 ¶¶ 31, 34.)  It also alleges "Defendant and Thomas are now using Plaintiff's confidential, proprietary, and trade secret information to target Plaintiff's banking, financial services, and investment industry clients and convince the clients to end their relationships with Plaintiff and transition to Defendant." (*Id.*)  Plaintiff includes examples of Thomas contacting Plaintiff's employees and customers days after resigning from Plaintiff and encouraging them to transition or move their business to Defendant.  (*Id.* ¶¶ 20–21.)  The Court finds this sufficient to state a claim under Counts I and II at this stage in the litigation.  The Court is not persuaded by Defendant's arguments related to the Texas State Court case because they are speculative, and the Court is not aware of the status of that case and what discovery has been conducted.

### 2.  Count III, IV, V

Defendant argues Counts III, IV, and V should be dismissed because Plaintiff insufficiently pleads the knowledge component of these counts.   (Doc. 10 at 14.) Defendant also argues Plaintiff improperly references unspecified agreements, unspecified business expectancies, and insufficient allegations to support Defendant acted intentionally

or improperly.  (*Id.*)

Plaintiff argues dismissal is unwarranted because "the Complaint plausibly pleads Defendant's knowledge" at this stage in the dispute.  (Doc. 14 at 13–14.)  According to Plaintiff, it was proper to make allegations on information and belief because the facts are possessed and controlled by Defendant.  (*Id.* at 14.)

> **a.  *Count III–Intentional Interference with Contractual Relations and Business Expectancies***

Count III alleges "[o]n information and belief, Defendant had knowledge of the Agreement (and of Thomas' other agreements with Plaintiff such as Thomas' post-tuition payment employment agreement) and Thomas['] obligations thereunder."  (Doc. 1 ¶ 50.) It also alleges Defendant "had knowledge of business expectancies Plaintiff had with current and prospective customers, the revenue generated by those customers, and the time, money, and resources Plaintiff invested in those customers."  (*Id.*)  Last, it alleges Defendant "intentionally interfered with, induced, and/or caused Thomas to breach the Agreement and other agreements Thomas and Plaintiff entered, and interfered with business expectancies Plaintiff had with its current and prospective customers."  (*Id.* ¶ 51.)

Defendant argues Count III should be dismissed because "Plaintiff makes only conclusory and speculative allegations related to [Defendant's] 'knowledge' of the Agreement, 'other' unspecified agreements into which Thomas and Plaintiff entered, and of Plaintiff's unspecified business expectancies."  (Doc. 10 at 14.)  Defendant also argues Plaintiff "makes only conclusory and speculative allegations that 'through the actions described above' (of which there are no actions described, apart from [Defendant] simply hiring Thomas) . . . [Defendant] acted intentionally or improperly."  (*Id.*)

Under Arizona law, "a plaintiff must show 'the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.'"  *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App.

2005) (quoting *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 494 (Ariz. Ct. App. 1995)).   Furthermore, "the interference must be 'improper as to motive or means' before liability will attach."  *Wallace*, 909 P.2d at 494 (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (1985)).   Here, Plaintiff has sufficiently alleged Defendant knew of the contractual relationship between Thomas and Plaintiff regarding the Agreement and the tuition agreement.[6]  For the reasons mentioned in Section III(E)(1)(c), the Court finds the information and belief pleadings proper at this stage.  The Court also finds the hiring of Thomas sufficient to support a claim for intentional and improper action based on the context of the hiring (i.e. Defendant hired and allowed Thomas to solicit Plaintiff's customers and employees shortly after he left Plaintiff's employment).  *Cf. SinglePoint Direct Solar LLC v. Curiel*, No. CV-21-0989-PHX-JAT, 2022 WL 331157, at *14 (D. Ariz. Feb. 3, 2022) (finding complaint insufficient to state a claim because it did not allege defendants had solicited plaintiff's client or prospective client.)

Thus, the Court finds Plaintiff has sufficiently stated a claim for relief under Count III to survive Defendant's Motion to Dismiss.

### b. Count IV and V–Aiding and Abetting (Fiduciary Duty & Conversion)

Count IV alleges "Thomas breached fiduciary duties he owed to Plaintiff, and on information and belief, Defendant knew or reasonably should have known Thomas was breaching those fiduciary duties to Plaintiff at the time of Thomas' breaches."  (Doc. 1 ¶ 54.)  It also alleges "on or about June 30, 2022, Plaintiff served Defendant a letter advising of Thomas' obligations and his violations of the Agreement."  (*Id.*)

Count V alleges "Thomas wrongfully exercised dominion and control over Plaintiff's property—including the Trade Secrets. Defendant knew, or reasonably should

---

[6]As Defendant points out, it is unclear exactly what "other agreements" or "business expectancies" Plaintiff is referencing.  Nonetheless, the Complaint clearly references the Agreement and alleges Plaintiff "supported and paid Thomas' tuition at Texas A&M Financial Planning School. Thomas signed an agreement to remain in Plaintiff's employ for two years after the tuition payments, which he breached by resigning to join Defendant."  (Doc. 1 ¶ 44.)

have known, Thomas wrongfully converted Plaintiff's property at the time Thomas converted the same." (Doc. 1 ¶ 59.) The Complaint also alleges "Defendant and its employee Thomas sought to steal and profit from Plaintiff's confidential, proprietary, and trade secret information." (*Id.* ¶¶ 32, 53, 58.)

Defendant argues Plaintiff fails to allege facts demonstrating a plausible cause of action for both aiding and abetting counts (i.e. Counts IV and V) because Plaintiff's allegations of knowledge are wholly conclusory and speculative. (Doc. 10 at 15.) Specifically, Defendant argues Plaintiff must plead facts showing it had actual knowledge the conduct it was aiding was a tort because mere knowledge of suspicious activity is insufficient. (*Id.*)

Under Arizona law, there are three elements in an aiding and abetting tort claim: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 23 (Ariz. 2002). "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation, and such knowledge may be inferred from the circumstances." *Id.*

The elements of a claim for breach of fiduciary duty are "the existence of a duty owed, a breach of that duty, and damages causally related to such breach." *Suroweic v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1004 (D. Ariz. 2011) (citing *Smethers v. Campion*, 108 P.3d 946, 949 (Ariz. Ct. App. 2005)). Moreover, conversion is established by showing the "act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citation omitted).

Here, Plaintiff has sufficiently alleged Defendant knew Thomas was breaching a fiduciary duty and converting confidential information for financial gain. *See JTH Tax*

*LLC v. Anderson*, No. CV-23-00209-PHX-DJH, 2023 WL 3499645, at *5 (D. Ariz. Apr. 18, 2023) (denying motion to dismiss for failure to state conversion claim because confidential information shared and converted for financial gain).  For the reasons mentioned in Section III(E)(1)(c), the Court finds the information and belief pleadings proper at this stage.  Thus, the Court finds Plaintiff has sufficiently stated a claim for relief under Count IV and V to survive Defendant's Motion to Dismiss.

### 3.  Count VI–Unjust Enrichment

Count VI alleges "Defendant has improperly and without justification retained various assets that rightfully belong to Plaintiff, including proprietary and confidential business information, the Trade Secrets, and profits from client accounts transitioned from Plaintiff to Defendant."  (Doc. 1 ¶ 64.)

Defendant argues the Complaint lacks factual allegations showing "Plaintiff conferred a benefit on" Defendant.  (Doc. 10 at 15.)  Defendant contends, "[a]t best, Plaintiff has alleged [Defendant] hired Thomas who allegedly misappropriate[d] trade secrets or other confidential information."  (*Id.*)  According to Defendant, Plaintiff does not provide any factual allegations as to how it has been injured and how Defendant has been enriched.  (Doc. 17 at 9.)

Plaintiff argues "[a]llegations of access to misappropriated trade secrets and confidential information can be a benefit conferred that supports a plausible claim for unjust enrichment." (Doc. 14 at 16 (citing *CPA Lead, LLC v. Adeptive Ads LLC*, No. 2:14-CV-1449 JCM CWH, 2014 WL 7072316, at *5 (D. Nev. Dec. 15, 2014).)

"[I]n order to prevail upon a theory of unjust enrichment, a plaintiff must establish that . . . plaintiff conferred a benefit upon the defendant."  *USLife Title Co. v. Gutkin*, 152 Ariz. 349, 354 (App. 1986).

Here, the Complaint alleges Defendant unlawfully retained Plaintiff's confidential business information by hiring Thomas and allowing him to use that information to target Plaintiff's customers and employees despite the Agreement's limitation on Plaintiff's use of that information.  (*See* Doc. 1 ¶¶ 31, 63.)  The Complaint also alleges Plaintiff was

1   damaged because it lost business when customers transitioned to Defendant.  (*Id.* ¶ 51, 63.)

2   The Court finds that Plaintiff has sufficiently stated a claim for relief under unjust

3   enrichment to survive Defendant's Motion to Dismiss

### 4.  Count VII–Unfair Competition Based on Misappropriation

5          Count VII alleges "Defendant's actions described in this Complaint, including,

6   without limitation, improperly procuring, possessing, and using Plaintiff's property and

7   confidential business information without authorization was for the purpose of advancing

8   and providing an unfair competitive advantage to Defendant's rival business interest."

9   (Doc. 1 ¶ 70.)

10         Defendant argues this count should be dismissed because Plaintiff fails to "allege

11   any facts that the public could be or has been misled by any conduct undertaken by

12   [Defendant]."  (Doc. 10 at 16.)  Defendant cites to two district court cases for the

13   proposition that "the universal test for unfair competition is whether the public is likely to

14   be confused."  (Doc. 10 at 15–16 (cleaned up).)  *See Doe v. Ariz. Hosp. & Healthcare*

15   *Ass'n*, 2009 WL 1423378, *11 (D. Ariz. Mar. 19, 2009); *HTS, Inc. v. Boley*, 954 F.Supp.2d

16   927, 946 (D. Ariz. 2013).  Plaintiff argues public confusion does not have to be proven in

17   an unfair competition claim based on misappropriation; it only needs to show it was

18   engaged in competitive business with Defendant.  (Doc. 14 at 16–17.)  Defendant does not

19   address Plaintiff's argument in its Reply.[7]

20         "The common law doctrine of unfair competition is based on the principles of

21   equity."  *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998).

22   "The general purpose of the doctrine is to prevent business conduct that is 'contrary to

23   honest practice in industrial or commercial matters.'"  *Id.* (quoting *Am. Heritage Life Ins.*

24   *Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)).  "The Arizona Court of

25   Appeals has held that the common law doctrine of unfair competition encompasses several

26         [7]In its Reply, Defendant argues for the first time, that Plaintiff only pleads legal
conclusions and provides no factual support for this claim.  The Court will not address this

27   argument.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court
need not consider arguments raised for the first time in a reply brief.")

28

tort theories, such as trademark infringement, false advertising, palming off, and misappropriation." *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 983 (D. Ariz. 2015) (internal quotation marks omitted) (quoting *Doe*, 2009 WL 1423378, at *11). Palming off consists of "a false representation tending to induce buyers to believe that defendant's product is that of the plaintiff." *Id.* (quoting *Doe*, 2009 WL 1423378, at *11). "Misappropriation involves the unfair taking for profit, at little or no cost, of property acquired by another through investment of substantial time and money." *Fairway Constructors*, 970 P.2d at 957.

"In order to maintain an action for unfair competition under Arizona law, [the plaintiff] must either show that it was engaged in competitive business with [the defendant] or that [the defendant's] actions were likely to produce public confusion." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (internal citation omitted). To be in competition with each other, parties must solicit the same trade or solicit the same customers. *Id.* at 408.

Here, Plaintiff alleges "Defendant directly competes with Plaintiff as both Defendant and Plaintiff offer brokerage and investment services for their customers and perform the same, or substantially the same, functions connected with the banking, financial services, and investment industry." (Doc. 1 ¶ 19.) Plaintiff also alleges "Thomas also solicited Plaintiff's customers to move business from Plaintiff and to Thomas or Defendant." (*Id.* ¶ 21.) At this stage in the litigation the Court will allow the unfair competition claim to proceed because Plaintiff has alleged it is in competitive business with Defendant. *See Sutter Home Winery*, 971 F.2d at 407–08; *but see Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, No. CV-21-01540-PHX-DGC, 2023 WL 4847600, at *2–3 (D. Ariz. July 28, 2023) (finding "it makes no sense to suggest that the tort of unfair competition can be established simply by proving the parties compete").[8]

---

[8]Although the Court is skeptical of whether the Ninth Circuit's seemingly disjunctive test for unfair competition applies in this case, the Court does not find the authority cited by Defendant persuasive enough to dismiss this Count on this basis. *See Doe*, 2009 WL 1423378 at *11–12 (dismissing unfair competition claim for failing to allege, among other things, a theory of misappropriation); *Boley*, 954 F.Supp.2d at 946 (dismissing unfair competition claim based on preemption); *see also Boice v. Stevenson*,

### 5.  Count VIII–Civil Conspiracy

Count VIII alleges "Defendant and Thomas have agreed to and engaged in a conspiracy among themselves with the unlawful purpose of misappropriating and converting Plaintiff's Trade Secrets and other confidential and proprietary business information and property."  (Doc. 1 ¶ 75.)  It also alleges Defendant committed the following actions in furtherance of the conspiracy:

> A. Knowing Thomas was subject to non-solicitation and other requirements under the Agreement, allowed Thomas to access its systems to establish client profiles;
> B. Facilitated Thomas' communications with Plaintiff's customers to seek authorizations to transfer their accounts to Defendant;
> C. Knowing of the Agreement's requirements and Plaintiff's efforts to enforce them, accepted transfer of client assets; and
> D. On information and belief, agreed to accept the client transfers on terms and conditions mirroring, either in full or in relevant part, the terms and conditions the client received with Plaintiff and under the Agreement.

(*Id.* ¶ 76.)

Defendant argues Plaintiff fails to state a claim of civil conspiracy because it "pleads only the conclusion of the existence of an agreement between Thomas and [Defendant], not any facts supporting that conclusion."  (Doc. 10 at 16.)  Plaintiff argues it does not need to prove facts with evidence at the motion to dismiss stage and information and belief allegations are proper because certain parts of the conspiracy are within Defendant's knowledge and control.  (Doc. 14 at 17.)  According to Plaintiff, it has sufficiently alleged Defendant and Thomas conspired to take confidential and proprietary business information and use it to get Plaintiff's customers to Defendant.  (*Id.*)  Defendant does not address Plaintiff's argument in its Reply.[9]

---

187 P.2d 648 (1947) ("The question in every [unfair competition by misuse of a tradename] case is whether . . . the name adopted by defendant has previously come to indicate plaintiff's business, and *whether the public is likely to be deceived*." (emphasis added)). Defendant may re-raise this argument with more support at summary judgment.

[9] Instead, Defendant argues for the first time in its Reply that Plaintiff's civil conspiracy claim fails because Plaintiff fails to sufficiently plead an underlying tort claim. The Court will not address this argument. *See Zamani*, 491 F.3d at 997.

1    "For a civil conspiracy to occur[,] two or more people must agree to accomplish an

2    unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."

3    *Wells Fargo*, 38 P.3d at 36 (citation omitted).

4    Here, Plaintiff alleges Defendant and Thomas conspired to misappropriate

5    Plaintiff's information and property to capture market share.  These allegations are

6    sufficient to state a claim for relief.

7    **IV.      CONCLUSION**

8    For the reasons stated above, the Court grants the Motion to Dismiss (Doc. 10) to

9    the extent it asks the Court to find Section 7 of the Agreement cannot support any of

10   Plaintiff's Counts.  The Court denies the Motion to Dismiss in all other respects.  Defendant

11   must file an answer on or before **Tuesday, March 19, 2024**.

12   Dated this 5th day of March, 2024.

Honorable Scott H. Rash
United States District Judge